UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CLIFFORD W. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV-06-12-B-W |
| ) | |
| JOSEPH A. JACKSON, GARY MOEN, ) | |
| JEFFREY BEARCE and the TOWN OF ) | |
| WINSLOW, MAINE, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Clifford Smith brought a three-count complaint alleging excessive force by police officers in effecting his arrest in violation of 42 U.S.C. § 1983, on negligence grounds, and in violation of the Maine Civil Rights Act. Defendants move for summary judgment on all counts. The Court concludes that the Defendant's guilty plea to criminal trespass does not preclude his claim of excessive force against the arresting officers. The Court further concludes that there are factual issues that preclude summary judgment on the issues of qualified immunity under § 1983, discretionary function under the Maine Tort Claims Act, and objective reasonableness under the Maine Civil Rights Act. Because the Plaintiff has conceded that summary judgment should be granted as to one officer and the town, the Court grants the motion for summary judgment as to those defendants, but denies the motion as to the other two defendants.

## I.  STATEMENT OF FACTS

Clifford Smith and Lori Choie had a volatile, sometimes romantic relationship.[1] *Def.'s Statement of Material Facts* (DSMF) ¶¶ 39, 40 (Docket # 12).  Police officers from the town of Winslow, Maine had been called to Ms. Choie's residence at 7 Bellevue Street on numerous occasions, commonly to address some type of dispute between Ms. Choie and Mr. Smith; often when they arrived, either Ms. Choie or Mr. Smith or both would be highly intoxicated.  *Id.* ¶¶ 38-40.  On April 25, 2004, the Winslow Police had removed Mr. Smith from Ms. Choie's residence after she had called the police and, on the same day, he had been served with a trespass notice, advising him that he was prohibited from going to her residence.  *Id.* ¶¶ 28, 29.

On May 2, 2004, Mr. Smith was at a bar with friends and became intoxicated.  *Id.* ¶ 30.  He proceeded to Ms. Choie's residence to find the door locked.  *Id.* ¶ 31.  He forced the lock with a pocket knife and entered her house without knocking or making any further announcement of his presence.  *Id.* ¶ 31, 32.  After entering Ms. Choie's house, he found her in bed with another man.  *Id.* ¶ 33.  Mr. Smith decided to set fire to some pizza boxes that were on the stove and to take $21.00 that Ms. Choie had left on a table.  *Id.* ¶¶ 47-49.  After Ms. Choie awoke to find Mr. Smith in her house, the burned pizza boxes, and the missing $21.00, the police were called.[2]  *Id.* ¶ 47.

---

[1] In reciting the facts, the Court only refers to facts within the Defendants' Statements of Material Fact to the extent they have been admitted without qualification by the Plaintiff.  Regarding the incident itself, there is virtually no agreement between the Plaintiff and Defendants as to what happened.  Because the Court is bound to view the facts in the light most favorable to the Plaintiff, the facts are recounted according to the Plaintiff's version.

[2] Although they do not appear in the parties' Statements of Material Fact and the Court has not considered them, the following additional facts may provide some further context.  Mr. Smith claimed that he went to the Choie house because, after he returned home from the bar, there was a message from her on his answering machine that said: "Hi.  It's me." *Smith Dep.* 19: 9-11 (Docket # 16 Attach. 4).  Mr. Smith called a cab and went to Ms. Choie's house.  *Id.* at 19: 12-13.  After he entered and found Ms. Choie in bed with another man, he went into the kitchen and smoked a cigarette.  *Id.* at 23: 24-25.  Ms. Choie came out and told Mr. Smith he was not

Officer Joseph Jackson was working his patrol shift in Winslow and at approximately 11:20 p.m., he was dispatched to Ms. Choie's residence, having received a report of a break in. *Id.* ¶ 34. It reported that the person who had broken into the house was still inside and was refusing to leave and confirmed that Clifford Smith was that person. *Id.* ¶¶ 35, 36. Officer Gary Moen was also on patrol and was handling a different complaint when the call about the Choie incident came in. *Id.* ¶ 37. Because Officer Moen had prior experience with Mr. Smith, having handled numerous complaints and calls for assistance at the Choie residence, he decided to respond to provide assistance to Officer Jackson. *Id.* ¶ 38. Sergeant Jeffrey Bearce also heard the radio traffic at about 11:20 p.m. *Id.* ¶ 41. Sergeant Bearce was aware that the Waterville Police had been looking for Mr. Smith to serve a Protection from Abuse Order on him. *Id.* ¶ 42. After confirming that the person at Ms. Choie's residence was the same Mr. Smith for whom the Waterville Police had been searching, Sergeant Bearce advised that he would come to the scene with the Protection from Abuse paperwork so that the Winslow Police could serve it on Mr. Smith. *Id.* ¶¶ 43, 44.

Officer Jackson arrived first and found Mr. Smith sitting in the hallway. *Id.* ¶ 45. When he went inside, he observed burned pizza boxes. *Id.* ¶ 48. Ms. Choie and the man she was with stated that Mr. Smith had broken into the residence, had started a fire, had taken $21.00 on the table, and had refused to leave. *Id.* ¶¶ 47, 49. After he exited the residence, Mr. Smith remained sitting on the front steps hunched over with his elbows on his legs.[3] *Pl.'s Statement of Additional Material Fact* (PSAMF) ¶ 9 (Docket # 16, Attach. 1). By this

---

supposed to be there. *Id.* at 24: 6-7. Ms. Choie began to look for the cordless phone to call a cab for Mr. Smith. *Id.* at 25: 21-24. It turned out that Ms. Choie's son had taken the phone to his bedroom and called the police. *Id.* Neither Mr. Smith nor Ms. Choie knew that the police had been called. *Id.* at 26: 2. When the police arrived, Mr. Smith left to go outside and wait for a cab that had been called. *Id.* at 26: 4-20; 28: 1-3.

[3] From the time he came outside and began speaking to the three officers to the point of his arrest, the events are corroborated by the testimony of a neighbor, who witnessed the arrest from her dining room window, which faced the area of the incident. *Pl.'s Statement of Additional Material Fact* (PSAMF) ¶¶ 1-31 (Docket # 16, Attach. 1).

time, the two other officers had arrived and all three officers were laughing and talking to Mr. Smith.  (PSAMF) ¶ 11.  While sitting outside, Mr. Smith was doing nothing to resist the officers.  *Id.* ¶ 14.  He was neither physically provocative nor aggressive toward the officers in any way.  *Id*. ¶ 15.  He was not attempting to flee.  *Id*. ¶ 19.  He was not using profanity, and was not verbally abusive toward the officers in any way.  *Id*. ¶ 20.  He was not moving in any way at all.  *Id*. ¶ 21.

One officer said something to the effect:  "You know what you did, now you just need to come with us."  *Id.* ¶ 12.  Mr. Smith may have mumbled something in response.  *Id.* ¶ 13.  At some point, Mr. Smith said in a mumbled, but not raised, voice something like "No, I'm not going anywhere."  *Id.* ¶ 16.  One officer began walking back to a cruiser and the other two officers remained in front of the stairs where Mr. Smith was sitting.  *Id.* ¶ 17.  Officers Jackson and Moen began to make fun of Mr. Smith's drunken state and to antagonize him and continued to do so for a while.  *Id.* ¶ 22.

Officer Jackson then handcuffed Mr. Smith by the left hand, grabbed him and violently wrenched him off the stairs, with so much force that his whole body went up into the air.  *Id*. ¶ 23.  Officer Jackson threw Smith violently to the ground, thrusting his knee into Smith's back on the way down.  *Id.* ¶ 24.  As Smith's body struck the ground, his face smashed into the cement pad in front of the stairs where he had been sitting.  *Id*. ¶ 25.  As Officer Jackson was throwing Smith to the ground, Officer Moen was standing right next to him watching.  *Id*. ¶ 26.  After Mr. Smith was thrown to the ground, Mr. Smith said, "You broke my nose, you hurt me."  *Id.* ¶ 28.  In response, Officers Jackson and Moen laughed and denied throwing Mr. Smith to the ground, stating falsely that he had tripped and fallen down the steps.  *Id.* ¶ 29.  When the officers picked Mr. Smith up off the ground, his face was

bloody. *Id.* ¶ 30. Although an ambulance arrived, Officer Jackson announced that he would personally transport Mr. Smith to the hospital by police cruiser rather than allowing the ambulance to take him. *Id.* ¶ 31. Mr. Smith subsequently pleaded guilty to a charge of criminal trespass; a burglary charge was dismissed upon that guilty plea. DSMF ¶ 113.

Plaintiff filed a complaint against Officers Jackson and Moen on three counts: (1) Violation of 42 U.S.C. § 1983, (2) Negligence; and, (3) Violation of the Maine Civil Rights Act.[4] Defendants move for summary judgment as to all counts.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991) (internal citation omitted). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st

---

[4] In his initial complaint, Mr. Smith charged all three individual officers with violations of 42 U.S.C. § 1983, Negligence, and Violations of the Maine Civil Rights Act as well as charged the town of Winslow with a violation of 42 U.S.C. § 1983. These four Defendants collectively moved for summary judgment. *Defs.' Mot. for Summ. J.* (Docket # 11). In his *Memorandum in Opposition to Summary Judgment*, Plaintiff concedes that the record does not support liability against Defendant Bearce or the town of Winslow. *Pl.'s Mem. In Opp'n to Summ. J.* at 10 n. 4, 12 n. 5 (Docket # 17). In accordance with the Plaintiff's acquiescence, the Court grants the motion as against those two defendants. The Order will discuss the motion for summary judgment only as to the two remaining individual officers.

5

Cir. 2000) (citation omitted). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. *FDIC v. Anchor Props*, 13 F.3d 27, 30 (1st Cir. 1994).

### B. Count 1: Violation of 42 U.S.C. § 1983

#### 1. Issue Preclusion

In their motion for summary judgment, Defendants assert that the doctrine of issue preclusion bars the § 1983 claims. They note that following the incident, Mr. Smith pleaded guilty to the charge of criminal trespass. *Defs.' Mot. for Summ. J.* at 9. Defendants argue that Mr. Smith's plea and conviction for criminal trespass necessarily means that they were acting lawfully in arresting him and, further, that they had the right to use reasonable force to effect the arrest. *Defs.' Mot. for Summ. J.* at 9.

It is "well established that the doctrine of collateral estoppel, or issue preclusion, applies in civil rights actions brought pursuant to 42 U.S.C. § 1983." *Cinelli v. Revere*, 820 F.2d 474, 479 (1st Cir. 1987) (supplemental opinion); *Davis v. Schifone*, 185 F. Supp. 2d 95, 100 (D. Mass. 2002). A federal court "must give the same preclusive effect to issues already decided as would be given by the courts of the state in which the federal court sits." *Cinelli*, 820 F.2d at 479; *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982); 28 U.S.C. § 1738. In the state of Maine, a prior criminal conviction "conclusively establishes all facts essential to the final judgment of conviction." *Napier v. Town of Windham*, 187 F.3d 177, 184 (1st Cir. 1999) (quoting *Hanover Ins. Co. v. Hayward*, 464 A.2d 156, 160 (Me. 1983). The "convicted party is precluded from litigating the issues essential to that conviction in subsequent civil actions." *Napier*, 187 F.3d at 184.

Under Maine law, a person is guilty of criminal trespass if he "[r]emains in any place in defiance of a lawful order to leave that was personally communicated to that person by the

owner or another authorized person." 17-A M.R.S.A. § 402. Under the seminal case of *Heck v. Humphrey*, if a § 1983 plaintiff has been convicted of a crime that bears a relationship to his claim for § 1983 damages, the plaintiff may not recover such damages unless the conviction is invalidated. 512 U.S. 477, 486-87 (1994). Thus, Mr. Smith may not mount a § 1983 claim based on a legal position contrary to the facts essential to his conviction. For example, he could not be heard to say that he had a right to remain where he was prior to the arrest. But, Mr. Smith is claiming something different here: he is asserting that even though the officers had the right to use reasonable force to effect his lawful arrest, they used excessive force in doing so.

Under well recognized law, a § 1983 claim "is stated where there is no necessary implication of the invalidity of the conviction." *Thore v. Howe*, 466 F.3d 173, ___ (1st Cir. 2006); No. 06-1627, 2006 U.S. App. LEXIS 26817, at *16-17 (1st Cir. Oct. 27, 2006). The First Circuit recently illuminated this issue in *Thore*. Mr. Thore was convicted of assault on a police officer, but later initiated a § 1983 action against the police officers for excessive force during his arrest. The First Circuit explained that Mr. Thore's first claim - - namely, that he was not guilty of assault at all - - was a non-starter and was "barred by *Heck*." *Thore*, 2006 U.S. App. LEXIS 26817, at *18. However, *Thore* stated that his conviction for assault on an officer did not necessarily bar a later claim against the officers for excessive force. *Id.* at 19. "Just as it is true that a § 1983 excessive force claim after an assault conviction is not necessarily barred by *Heck*, it is also true that it is not necessarily free from *Heck*." *Id*. at 18-19. The question is whether "the excessive force claim and the conviction may be so interrelated factually as to bar the § 1983 claim." *Id.* at 19. After reviewing the facts, the

7

First Circuit concluded that the "record before us does not permit a determination of the requisite relatedness." *Id.*

Here, as in *Thore*, Mr. Smith's excessive force claim does not carry a "necessary implication of the invalidity of the [criminal trespass] conviction." *Id*. at 16-17. Furthermore, the relatedness of the criminal trespass conviction and the § 1983 excessive force claim at issue is more attenuated than the relatedness of the assault on an officer conviction and the § 1983 excessive force claim in *Thore*.

Defendants cite two First Circuit opinions for the proposition that Plaintiff's "plea and conviction to the crime of criminal trespass precludes him relitigating the lawfulness of his arrest for that crime." *Defs.' Mot. for Summ. J.* at 9. Defendants cite *Kyricopoulos v. Orleans*, in which the plaintiff filed a § 1983 cause of action, complaining that he had been maliciously arrested without probable cause. 967 F.2d 14 (1st Cir. 1992). Noting that Mr. Kyricopoulos had been found guilty of larceny by false pretenses in state court, the First Circuit concluded that he had been given a "full and fair opportunity" to raise probable cause questions at his criminal trial; as all the other requirements for issue preclusion obtained, the plaintiff was precluded from relitigating the same issue in his later civil suit. *Id.* at 17.

Defendants also cite *Napier v. Town of Windham* to say "[i]t is 'beyond doubt' that issue preclusion applies to a federal civil rights action following a criminal conviction in state court." 187 F.3d at 184. The fuller context of the Court's comments illustrates the flaw in Defendants' contention. The Court says,

> It is "beyond doubt" that issue preclusion applies to a federal civil rights action following a criminal conviction in state court. Because federal courts must give preclusive effect to judgments in state court whenever the courts of the particular state would do so, we examine Maine's collateral estoppel rules in this context. In Maine, a prior criminal conviction

8

> *"conclusively establishes all facts essential to the final judgment of conviction."* The convicted party is precluded *from litigating the issues essential to that conviction* in subsequent civil actions.

*Napier*, 187 F.3d at 184 (internal citation omitted) (emphasis added). Because Plaintiff is not attempting to relitigate the facts essential to his criminal trespass conviction, neither *Kyricopoulos* nor *Napier* assists the Defendants.

### 2. Qualified Immunity

Defendants' argue, in the alternative, that they are entitled to qualified immunity. To analyze this question, consistent with *Saucier v. Katz*, the First Circuit employs a three-part test:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. The court generally [should] address first the question whether at some abstract level the plaintiffs have asserted a violation of constitutional rights, second whether those rights are clearly established, and third whether a reasonable officer could have concluded that his actions did not violate plaintiffs' constitutional rights.

*Buchanan v. Maine*, No. 06-1466, 2006 U.S. App. LEXIS 28352, at *18-19 (1st Cir. November 16, 2006) (internal citation and punctuation omitted); *Jordan v. Carter*, 428 F.3d 67, 71-72 (1st Cir. 2005); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

#### a. Assertion of a Violation of Constitutional Rights

Under the Fourth Amendment, a law enforcement officer may use "such force as is reasonably necessary to effect an arrest." *United States v. McQueeney*, 674 F.2d 109, 113 (1st Cir. 1982). In an excessive force case, the "threshold constitutional question is analyzed under the Fourth Amendment's objective reasonableness standard." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 7 (1st Cir. 2005). The Supreme Court has established "a balancing test

9

for determining whether a particular exercise of force is constitutional: 'Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 148 (1st Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In *Saucier*, the Supreme Court said,

> Because "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene.

*Saucier*, 533 U.S. at 205 (quoting *Graham*, 490 U.S. at 393, 396, 397). The Court went on,

> *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

*Saucier*, 533 U.S. at 205 (quoting *Graham*, 490 U.S. at 396). Nevertheless, it is equally clear that the use of excessive force in carrying out an arrest may violate the Fourth Amendment's prohibition against unreasonable seizures of the person. *See Graham*, 490 U.S. at 395; *Kaluzynski v. Armstrong*, No. 00-267-B-S, 2001 U.S. Dist. LEXIS 11040, *11 (D. Me. May 16, 2001).

Defendants argue that they are entitled to qualified immunity, because "a reasonable officer, when viewed objectively, could have concluded that pulling Plaintiff quickly up from his seated position, or even intentionally taking Plaintiff to the ground, and handcuffing him in order to overcome his resistance would be lawful under the circumstances."[5]  *Defs.' Mot. for Summ. J.* at 10-11.

Among the factors *Saucier* directs the court to consider is the "severity of the crime at issue." *Saucier*, 533 U.S. at 205. Although Mr. Smith ultimately pleaded guilty only to criminal trespass, Ms. Choie's allegation that Mr. Smith had taken $21.00 suggests that the officers would have had probable cause to believe that Mr. Smith had committed both criminal trespass and a burglary. Under Maine state law, burglary of a structure that is a dwelling place is a Class B crime; a Class B crime provides for a period of incarceration "not to exceed 10 years." 17-A M.R.S.A. §§ 401(B)(4), 1252(2)(B). Criminal trespass is a Class D crime; a Class D crime provides for a period of incarceration "of less than one year." 17-A M.R.S.A. §§ 402(1)(A), 1252(2)(D). Burglary is certainly a serious crime; criminal trespass less so.

Another factor is whether Mr. Smith posed an immediate threat to the safety of the officers or others. *Saucier*, 533 U.S. at 205. Here, there is considerable background noise that suggests the situation was not as straightforward as either party indicates.[6] Nevertheless, viewed in the light most favorable to Mr. Smith, the record reveals that he had gone outside the Choie residence, that he was sitting on the front steps, ostensibly to wait for a cab ride to

---

[5] Defendants first argue that Defendant Jackson's actions were not intentional. *Defs.' Mot. for Summ. J.* at 10. This argument is misplaced, because the Court is required to view the evidence in the light most favorable to the Plaintiff and, when so viewed, Officer Jackson's actions could be deemed intentional.

[6] As noted, there had been multiple prior occasions when the police had been called to the Choie residence; Mr. Smith had been removed from the residence and served with a trespass notice on April 25, 2004; in this instance, Ms. Choie's son was the one to place the phone call to the police; Mr. Smith was highly intoxicated; he had lit some pizza boxes on fire; and there was an outstanding Protection from Abuse Order to be served on Mr. Smith.

take him home, that there were three police officers in the vicinity, that Mr. Smith was not being physically provocative or aggressive, that he was not attempting to flee, that he was not verbally abusive toward the officers, and that he was not moving at all.  Apart from the ever-present risk that an intoxicated person presents any officer, there is nothing to suggest that he posed an immediate threat to the officers or others.

The final factor is subsumed by the second:  whether he was actively resisting arrest or attempting to evade arrest by flight.  *Saucier*, 533 U.S. at 205.  He was not.  Notwithstanding the deference the law grants police officers to make on-the-scene, split-second judgments, in tense and potentially explosive situations, here, there is no evidence in this record that would allow the Court to conclude that Officer Jackson's slamming Mr. Smith's face into the concrete walkway fits within the scope of judicial deference.[7]  The Court concludes that the Plaintiff has asserted the violation of a constitutional right.

### b. Clearly Established Rights

The second inquiry requires far less consideration.  The Fourth Amendment's proscription on unreasonable seizures is, without question, "clearly established."  *See Saucier*, 533 U.S. at 201-02.  More specifically, the Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it

---

[7] Plaintiff states that the "same facts that support liability on the part of Officer Jackson for his use of excessive force also support liability against Officer Moen.  It is well-established that 'a police officer who fails to prevent the use in his presence of excessive force by another police officer may be held liable under § 1983." *Pl.'s Mem. In Opp'n To Summ. J*. at 10 (internal citations omitted).  Defendants contend that no such claim may be read into the Complaint but, in any event, potential liability under § 1983 "cannot be imposed… when the force in question is only seconds in duration and the non-involved officers have 'no realistic opportunity' to prevent it.'" *Defs.' Mot. for Summ. J*. at 12.  The case against Officer Moen is much closer.  The First Circuit has held that a police officer may be held liable in a § 1983 claim for "failure to stop the excessive use of force by a fellow officer…." *Torres-Rivera v. O'Neill-Cancel*, 406 F.3d 43, 52 (1st Cir. 2005); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 (1st Cir. 1990).  However, there is "[n]o liability for the non-participating bystander officers [if] the attack came quickly and was over in a matter of seconds…." *Torres-Rivera*, 406 F.3d at 52 (internal punctuation and citation omitted).  There is a factual question as to whether Officer Moen was or was not a "non-participating bystander."  He joined Officer Jackson in taunting Mr. Smith before the incident and in misinforming him after the incident.  He also did nothing to assure that Mr. Smith received medical treatment.

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The Court has no hesitation in concluding that it would be clear to a reasonable officer that the Defendants' conduct, as alleged by the Plaintiff, was unlawful in the situation described by the Plaintiff.

### c. The Reasonable Officer

Finally comes the third inquiry of "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Jordan*, 428 F.3d at 72. Reasonable officers would have understood that slamming an intoxicated and non-resistant man's face into a concrete walkway while effecting an arrest constitutes excessive force and violates the individual's Fourth Amendment rights. *See Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1228 (D. Me. 1996); *Barber v. Guay*, 910 F. Supp. 790, 800-01 (D. Me. 1995); *Fowles v. Stearns*, 886 F. Supp. 894, 901 (D. Me. 1995); *McLain v. Milligan*, 847 F. Supp. 970, 976 (D. Me. 1994); *compare with Andrews v. City of Calais*, No. 05-43-B-W, 2005 U.S. Dist. LEXIS 34778, *21 (D. Me. Nov. 9, 2005) ("[Plaintiff] was not slammed to the ground, but was laid down on the deck, with his hands cuffed behind him.").

### d. Conclusion - § 1983

The Court answers all three inquiries in the affirmative. Defendants are not entitled to qualified immunity and "resolution of the lawfulness of the Officers' use of force is thus preserved for the fact-finder." *Comfort*, 924 F. Supp. at 1229.

### C. Count 2: Negligence

The Maine Tort Claims Act (MTCA), 14 M.R.S.A. §§ 8101-8118, provides in relevant part, "[n]otwithstanding any liability that may have existed at common law,

employees of governmental entities shall be absolutely immune from personal civil liability for the following: …[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused…" 14 M.R.S.A. § 8111(1)(C). Defendants argue that because "a law enforcement official's use of force is a discretionary act," the Defendants are entitled to absolute immunity. *Defs.' Mot. for Summ. J.* at 13 (citing *Comfort*, 924 F. Supp. at 1236.) However, *Comfort* goes on to state that "[t]he MTCA affords police officers discretionary immunity except to the extent they act in a manner so egregious as to 'clearly exceed, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity as [police officers].'" *Comfort*, 924 F. Supp at 1236. (citation omitted). Based on similar allegations, the court in *Comfort* concluded that the "individual officers… [did not] benefit from the MTCA's protection" because "[a]s plead, albeit inartfully, the alleged conduct is egregious and well beyond the scope of the discretion afforded law enforcement officers…" *Id*. at 1236-37. Here, viewed in the light most favorable to the Plaintiff, Defendants' conduct is similarly egregious and well beyond whatever discretion may be vested with them on account of their official capacities.

### D. Count 3: Violation of the Maine Civil Rights Act

The Maine Civil Rights Act, 5 M.R.S.A. § 4682 *et seq.*, was "patterned after 42 U.S.C. § 1983". *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994); *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 125 (D. Me. 2004); *Comfort*, 924 F. Supp. at 1236; *Grenier v. Kennebec County, Maine*, 733 F. Supp. 455, 458 n.6 (D. Me. 1990). Ordinarily, once the § 1983 count is resolved, the Maine Civil Rights Act claim follows course. However, here, Defendants present a novel argument.

Relying on *Leach v. Betters*, 599 A.2d 424 (Me. 1991), they assert that the standard for a state of Maine excessive force claim is different than the standard for a § 1983 claim. Defendants assert that the Maine law standard is "subjective, rather than objective, reasonableness and an officer is immune unless he uses a degree of force that he feels is unnecessary." *Defs.' Mot. for Summ. J.* at 11. *Leach*, a Maine Torts Act case, contains a footnote which quotes a portion of the Maine Criminal Code:

> Maine's Criminal Code defines the justifiable use of force by a police officer as follows: A law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person: When and to the extent that he reasonably believes it necessary to effect an arrest… unless he knows that the arrest or detention is illegal….

*Leach*, 599 A.2d at 426, n.3; 17-A M.R.S. § 107(1)(A). In response, Plaintiff states simply that the § 1983 analysis should be applied and summary judgment on these claims should be denied. *Pl.'s Mem. In Opp'n to Summ. J.* at 12.

Following *Leach*, the Maine Supreme Judicial Court decided *Richards v. Town of Eliot*, 2001 ME 132, 780 A.2d 281. In *Richards*, the Maine Law Court reiterated that the "analysis of the state law claims of illegal arrest and excessive force is the same as for the federal law claims." *Id.* ¶ 31, 780 A.2d at 292. Regarding whether the standard is objective or subjective, *Richards* stated "[o]fficers whose actions are 'objectively reasonable' in light of the facts and circumstances confronting them are not acting beyond the scope of their discretion and are immune under the Maine Tort Claims Act." *Id.* ¶ 32, 780 A.2d at 292 (internal citation omitted). *Richards* eclipses any suggestion in *Leach* that the standard in Maine, for determining whether excessive force in violation of the law has been used, is an

officer's subjective belief. The state standard, like the federal standard, is objective.[8] Since the standard for the state claim is the same as the federal standard, the result must be the same for the same reasons. *See Dimmitt*, 220 F.R.D. at 125.

### III. CONCLUSION

The Court DENIES the motion for summary judgment (Docket # 11) as to Defendants Jackson and Moen and GRANTS the motion for summary judgment as to Defendants Bearce and the town of Winslow, Maine.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of November, 2006

---

[8] After reviewing federal case law, *Richards* states: "These cases made clear that, when arresting a person for a nonviolent offense when she is not attempting to flee or resisting arrest and is not a threat to the officers' safety, striking her with sufficient force to knock her to the ground, kneeing her in the ribs while she was face-down on the ground, lifting her by the handcuffs, and causing severe pain, constitutes conduct that is excessive and unreasonable." *Richards*, 2001 ME 132, ¶ 27, 780 A.2d at 291.